<u>**FOR PUBLICATION**</u>

<u>**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**</u>

|  |  |
|---|---|
| ELENA KESTELBOYM, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 07-857 (JAG) |
| MICHAEL CHERTOFF, Secretary, Department of Homeland Security; RUSSELL OWEN, District Director, United States Citizenship and Customs Enforcement [sic]; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, | : OPINION |
| Defendants. | : |

<u>**APPEARANCES:**</u>

Joshua Bardavid, Esq.
Law Office of Theodore Cox
401 Broadway
22nd Floor
New York, NY 10013
For Plaintiff Elena Kestelboym

Jafer Aftab, Esq.
Office of the United States Attorney
970 Broad Street
Suite 700
Newark, NJ 07102
For Defendants Michael Chertoff, Russell Owen, and the United States Citizenship and Immigration Services

<u>**GREENAWAY, JR., U.S.D.J.**</u>

    This matter comes before this Court on the motion of Defendants Michael Chertoff,

Russell Owen, and the United States Citizenship and Immigration Services (collectively "Defendants"), to dismiss the Complaint for lack of subject matter jurisdiction, pursuant to FED. R. CIV. P. 12(b)(1).[1]  For the reasons set forth below, Defendants' motion is denied.

## I. FACTUAL BACKGROUND

Plaintiff Elena Kestelboym ("Plaintiff"), a native of the Soviet Union, legally entered the United States on August 4, 1991 as a tourist.  (Am. Compl. ¶¶ 4, 12.)  On April 1, 1994, Plaintiff married Sergey Faybushovich in New York.  (Id. at ¶ 13.)  After their marriage, Mr. Faybushovich submitted an I-140 petition for lawful permanent residence on Plaintiff's behalf.[2] (Id. at ¶ 14.)  In 1996, before Mr. Faybushovich's petition was approved, Plaintiff separated from her husband.  (Id. at ¶ 15.)  Later, Mr. Faybushovich's petition was approved, and on February 20, 1997, Plaintiff submitted an I-485 application to adjust her status.  (Id. at ¶ 14.)

After Plaintiff separated from her husband, she began dating Igor Kestelboym.  (Id. at ¶ 16.)  Plaintiff gave birth to Mr. Kestelboym's first child in 1998, and his second child in 1999.  (Id.)  While she was five months pregnant with her second child, "Plaintiff was interviewed by an officer with the Immigration and Naturalization Service" ("INS")[3] with respect to her permanent

---

[1] Defendants allege that "[the complaint] is at minimum, unripe."  (Defs.' Br. in Supp. of Mot. to Dismiss 2.)  However, Defendants fail to cite a specific Federal Rule of Civil Procedure, or any other rule, in support of their position.  In addition, the lone case cited in Defendants' brief is based on a Rule 12(b)(1) motion to dismiss.  Therefore, this Court will treat Defendants' motion as one to dismiss for lack of subject matter jurisdiction, pursuant to FED. R. CIV. P. 12(b)(1).

[2] The exact date of Mr. Faybushovich's petition is unknown.

[3] In 2002, Congress enacted the Homeland Security Act of 2002, which abolished the INS and transferred all functions to the Department of Homeland Security.  See 6 U.S.C. §§ 101 - 1208 (2007).

resident application. (Id. at ¶ 18.) Mr. Faybushovich accompanied Plaintiff to the interview. (Id. at 19.)

Plaintiff claims that she told the INS officer, during her interview, that she had separated from Mr. Faybushovich, and that Mr. Faybushovich was not the father of her children. (Id. at ¶ 19.) On December 10, 1999, Plaintiff's lawful permanent residence application was approved. (Id. at ¶ 21.) On May 1, 2000, Plaintiff's divorce from Mr. Faybushovich became final, and on September 17, 2000, Plaintiff married Mr. Kestelboym. (Id. at ¶¶ 22-23.)

On August 2, 2004, Plaintiff filed an N-400 application for naturalization, pursuant to § 319(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1430(a) (1990). (Id. at ¶ 24.) The United States Citizenship and Immigration Services ("USCIS") denied Plaintiff's naturalization application for lack of good moral character on March 28, 2006. (Id. at 25.) USCIS alleges that Plaintiff failed "to disclose to the interviewing adjustment of status officer that she had two children by a man other than [her] petitioning husband." (Id.) Plaintiff disputes that she made any misrepresentations, and filed a Request for Hearing, pursuant to § 336 of the INA, 8 U.S.C. § 1447 (1990). (Id. at ¶ 26.) On October 30, 2006, USCIS denied Plaintiff's Request for Hearing, stating that Plaintiff had lied under oath. (Id. at ¶ 27.) USCIS claims that during Plaintiff's N-336 appeal interview, she signed a sworn false statement indicating that she had never lied to an immigration officer or failed to disclose the truth. (Id.)

On February 21, 2007, Plaintiff filed a complaint in this Court seeking a de novo review of the denial of her naturalization application, pursuant to § 310(c) of the INA, 8 U.S.C. § 1421(c) (1990). On May 8, 2007, six days before Defendants' answer was due, USCIS issued a Notice to Appear to Plaintiff. The Notice stated that Plaintiff was removable from the United

States for procuring her permanent resident status "by fraud or by willfully misrepresenting a material fact" because she "'deliberately misrepresented to the Service that she and her United States Citizen petitioning husband were living together' and that she 'deliberately withheld the fact that [she] had [two children by] another man . . . . '" (Pl.'s Br. in Opp'n to Mot. to Dismiss 6) (internal citation omitted).

Thereafter, Defendants filed a motion to dismiss Plaintiff's Complaint. Defendants claim that, pursuant to 8 U.S.C. § 1429 (1990), because a removal proceeding is pending, this Court does not have jurisdiction over Plaintiff's Complaint. Plaintiff counters and states that § 1429 does not impose any restriction on subject matter jurisdiction. Plaintiff argues that if such restrictions were permitted, USCIS could effectively circumvent the congressionally mandated de novo judicial review of naturalization decisions simply by initiating removal proceedings.

## II. STANDARD OF REVIEW

Motions to dismiss for lack of subject matter jurisdiction, pursuant to FED. R. CIV. P. 12(b)(1), may be raised at any time. See 2 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 12.30[1] (3d ed. 2007). Rule 12(b)(1) challenges are either facial or factual attacks. See id. at § 12.30[4]. "A facial attack questions the sufficiency of the pleading," and "[i]n reviewing a facial attack, a trial court accepts the allegations in the complaint as true." Id. However, "when a court reviews a complaint under a factual attack, the allegations have no presumptive truthfulness, and the court that must weigh the evidence has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." Id.; see also Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977) (stating that "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed

material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."). In short, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Mortensen, 549 F.2d at 891; see also Carpet Group Int'l v. Oriental Rug Imps. Ass'n, 227 F.3d 62, 69 (3d Cir. 2000). "The [trial] [c]ourt must be careful, however, not to allow its consideration of jurisdiction to spill over into a determination of the merits of the case, and thus must tread lightly in its consideration of the facts concerning jurisdiction." Dugan v. Coastal Indus., Inc., 96 F. Supp. 2d 481, 483 (E.D. Pa. 2000).

"[T]he plaintiff will have the burden of proof that jurisdiction does in fact exist," Mortensen, 549 F.2d at 891, and must not only demonstrate that a controversy existed at the time it filed suit, but that it continues to exist throughout the litigation, Spectronics Corp. v. H.B. Fuller Co., Inc., 940 F.2d 631, 635 (Fed. Cir. 1991), abrogated on other grounds by Liquid Dynamics Corp. v. Vaughan Co., Inc., 355 F.3d 1361, 1370 (Fed. Cir. 2004).

## III. DISCUSSION

### A. Legislative History

In order to evaluate whether this Court has subject matter jurisdiction over the case sub judice it is necessary to review the relevant immigration law briefly. Until 1990, United States district courts were vested with exclusive jurisdiction to naturalize citizens of the United States. 8 U.S.C. § 1421 (1988), amended by 8 U.S.C. § 1421(a) (1990). A district court was, however, prohibited from naturalizing an alien against whom there was a deportation proceeding pending,[4]

[4] "No person shall be naturalized against whom there is a final finding of deportability pursuant to a warrant of arrest . . . ; and no petition for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a deportation proceeding pursuant to

pursuant to a warrant of arrest.[5]  8 U.S.C. § 1429 (1952), amended by 8 U.S.C. § 1429 (1990). This "priority provision" was intended to prevent "a race between the alien to gain citizenship and the Attorney General to deport him."  Shomberg v. United States, 348 U.S. 540, 544 (1955). Prior to the enactment of this provision, the deportation and naturalization processes would proceed simultaneously until either deportation or naturalization ipso facto terminated the possibility of the other occurring.  Id. at 543.

      Congress overhauled the naturalization process with the Immigration and Nationality Act of 1990.  This Act removed naturalization jurisdiction from the district courts and vested the Attorney General with "sole authority to naturalize persons as citizens of the United States."  8 U.S.C. § 1421(a) (1990).  District courts, however, were given the authority to conduct de novo reviews of denials of applications for naturalization.  Id.[6]  The "priority provision," § 310(c) of the INA, was similarly amended to reflect the shift from judicial to administrative naturalization proceedings.  It now provides that "no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest . . . ; and no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest . . . ."  8 U.S.C. § 1429 (1990).

---

a warrant of arrest."  8 U.S.C. § 1429 (1952), amended by 8 U.S.C. § 1429 (1990).

    [5] An order to show cause issued in a deportation proceeding is regarded as a warrant of arrest.  8 C.F.R. § 318.1 (1997).

    [6] "A person whose application for naturalization under this title is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides. . . . Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application."  8 U.S.C. §1421(c) (1990).

### B. Decisions of Other Circuits

Where a petitioner's naturalization application has been denied, and the Attorney General subsequently initiates removal proceedings, especially on the same grounds as the application denial, the intersection of 8 U.S.C. §§ 1421 and 1429 is at issue. The Third Circuit has yet to address and resolve this particular dilemma. Apokarina v. Ashcroft, 93 Fed. App'x 469, 472 (3d Cir. 2004) (stating that it is an open question whether the district court has subject matter jurisdiction, pursuant to 8 U.S.C. § 1421(c), to review the Attorney General's denial of a naturalization petition). Therefore, this Court will look to other circuits for guidance.

Two prevailing views have been adopted by our sister courts. The first view is that § 1429 applies only to the Attorney General, and does not strip the district courts of jurisdiction. Zayed v. United States, 368 F.3d 902, 906 (6th Cir. 2004). However, the Zayed perspective considers § 1429 to prevent the district court from granting effective relief under § 1421(c), because it cannot properly order the Attorney General to grant a petitioner's application for naturalization. Id.; see also Bellajaro v. Schiltgen, 378 F.3d 1042 (9th Cir. 2004) (holding that 8 U.S.C. § 1421(c) confers jurisdiction on the district courts to review any denial of an application for naturalization, but stating in dicta that § 1429 limits the scope of review and relief available where removal proceedings are pending); Dimopoulos v. Blakeway, No. 07-127, 2007 U.S. Dist. LEXIS 20920 (S.D. Tex. Mar. 23, 2007); Trujillo v. Barrows, No. 06-203, 2006 U.S. Dist. LEXIS 81785 (E.D. Tex. Nov. 8, 2006).

In Zayed, the INS denied the petitioner's naturalization application on the grounds that she lacked the good moral character required for naturalization. Zayed, 368 F.3d at 904. The petitioner then filed a petition for review in the United States District Court for the Northern

District of Ohio.  Id.  A few weeks after the petitioner filed for review, the INS initiated removal proceedings against her, alleging that she used a sham divorce to obtain lawful residence in the United States.  Id.  The district court concluded that § 1429 effectively stripped it of jurisdiction to consider the petitioner's appeal, and dismissed the petition.  Zayed v. United States, 221 F. Supp. 2d 813, 817 (N.D. Ohio 2002).

The Sixth Circuit, however, relying on the plain language of § 1429, found that by its terms, the statute only limits the authority of the Attorney General, and not the district courts, to act on applications for naturalization.  Zayed, 368 F.3d at 905.  While the Sixth Circuit noted that the history of the Immigration and Nationality Act of 1990 suggests that Congress intended for removal proceedings to have priority over naturalization proceedings, the circuit concluded that the amended § 1429 does not divest the district courts of the jurisdiction granted under § 1421(c). Id. at 905-06.  Instead, the circuit found that the effect of § 1429 is to limit the scope of the court's review, and eliminate an effective remedy, as the district court could not properly order the Attorney General to grant the petitioner's application for naturalization while removal proceedings were pending.  Id. at 906.

The other side of the circuit split advances the position that § 1429 precludes only the Attorney General from *considering* a petition for naturalization by an alien against whom removal proceedings are pending.  Ngwana v. Attorney Gen. of the U.S., 40 F. Supp. 2d 319, 321 (D. Md. 1999).  The Ngwana view holds that a district court can review the Attorney General's denial of a naturalization application, and order the Attorney General to naturalize a petitioner without violating § 1421(c).  Id.; see also Grewal v. Ashcroft, 301 F. Supp. 2d 692 (N.D. Ohio 2004); Saad v. Barrows, No. 03-1342, 2004 U.S. Dist. LEXIS 11085 (N.D. Tex. June 16, 2004).

8

In Ngwana, the INS denied the petitioner's naturalization application on the grounds that he concealed a material fact at the time of his immigration to the United States. The INS alleged that the petitioner claimed to be living with his wife when, in fact, he was not, and subsequently instituted deportation proceedings against him. Ngwana, 40 F. Supp. 2d at 320. The petitioner appealed the denial of his application to the district court, and the INS moved to dismiss the claim for lack of subject matter jurisdiction. Id.

The district court relied on the plain language of § 1429 to render its decision. Section 1429 states that "no petition for naturalization shall be *considered* by the *Attorney General* if there is pending against the petitioner a deportation proceeding pursuant to a warrant of arrest." 8 U.S.C. § 1429 (emphasis added). The district court, therefore, found that the section only prevents the Attorney General from reviewing a naturalization application of an alien against whom removal proceedings have been instituted. Id. at 321. The court held that the section has no effect on the district court's jurisdiction to review the administrative denial of a naturalization application. Id. The court also considered the consequences of a contrary holding, and found that if § 1429 divested district courts of jurisdiction to review denials of naturalization applications, the INS could effectively circumvent the congressionally mandated de novo judicial review of naturalization proceedings. Id.

**C.  Subject Matter Jurisdiction is Proper**

This Court finds the view adopted in Ngwana persuasive. As decided in Ngwana, the plain language of 8 U.S.C. § 1429 limits only the Attorney General's reviewing authority, and has no effect on this Court's authority to review a denial of a naturalization application, and ultimately reverse such decision. The congressional history supports this position. When

drafting § 1429, Congress noted two, distinct stages of immigration proceedings, and placed different limitations on the Attorney General relative to each stage.

First, where there is a final finding of removability, Congress declares that "no one shall be naturalized." 8 U.S.C. § 1429 (1990). This restriction is clear, and precludes all action pertaining to a naturalization application. Second, where removal proceedings are simply pending, Congress merely limits the Attorney General from *considering* an application. Id. If Congress wanted to prohibit the Attorney General from naturalizing an applicant when removal proceedings are pending, it would have used the same, unambiguous language used when discussing the stage of immigration proceedings during which a final finding of removability issues.

Finally, the preferred construction of a statute and its regulations is one that gives meaning to all provisions. United States v. Higgins, 128 F.3d 138, 142 (3d Cir. 1997). If this Court were to read the statute as Defendants suggest, Congress's grant of jurisdiction to the district courts to review the denial of naturalization applications would be effectively rendered void. The Attorney General could then trump all applications for naturalization by simply instituting removal proceedings. Therefore, this Court does not interpret §§ 1421 and 1429 as permitting the Attorney General to avoid this Court's authority to review naturalization determinations by initiating removal proceedings.

## IV.  CONCLUSION

For the reasons stated above, the motion of Defendants Michael Chertoff, Russell Owen, and the United States Citizenship and Immigration Services, to dismiss for lack of subject matter jurisdiction, pursuant to FED. R. CIV. P. 12(b)(1), is denied.

Date: March 13, 2008

                                            S/Joseph A. Greenaway, Jr.
                                            JOSEPH A. GREENAWAY, JR., U.S.D.J.